IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| NARTISHA BATES<br>12401 Rockside Road, Unit 25273<br>Garfield Heights, Ohio 44125<br><br>     Plaintiff,<br><br>    v.<br><br>UNIVERSITY HOSPITALS HEALTH<br>SYSTEM, INC.<br>3605 Warrensville Center Road<br>Shaker Heights, Ohio 44122<br><br>  **Serve also:**<br>  UNIVERSITY HOSPITALS HEALTH<br>  SYSTEM, INC.<br>  c/o ACFB Incorporated<br>  200 Public Square, Suite 2300<br>  Cleveland Ohio, 44114<br><br>     Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | CASE NO.<br><br>JUDGE:<br><br><br><br>**COMPLAINT FOR DAMAGES**<br>**AND REINSTATEMENT**<br><br>**JURY DEMAND ENDORSED**<br>**HEREIN** |

Plaintiff, Nartisha Bates, by and through undersigned counsel, as her Complaint against the Defendant, states and avers the following:

## PARTIES

1. Bates is a resident of the city of Garfield Heights, county of Cuyahoga, state of Ohio.

2. University Hospitals Health System, Inc. ("University Hospitals") is a domestic corporation that operates a business located at 20800 Harvard Road, Highland Hills, Ohio 44122.

3. University Hospitals was at all times hereinafter mentioned an employer within the meaning of R.C. § 4112.01 *et seq*.



**JURISDICTION & VENUE**

4. This court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 in that Bates is alleging Federal Law Claims under The Americans with Disabilities Act ("ADA") 42 U.S.C. 126 § 12101 *et seq*. The Family Medical Leave Act ("FMLA"), 29 U.S.C § 2601, *et seq.*, and the Civil Rights Act of 1964, 42 U.S.C. 2000e-2 *et seq*.

5. All material events alleged in this Complaint occurred in the county of Cuyahoga.

6. This Court has supplemental jurisdiction over Bates' state law claims pursuant to 28 U.S.C. § 1367 as Bates' state law claims are so closely related to her federal law claims that they form part of the same case or controversy under Article III of the United States Constitution.

7. Venue is proper in this Court pursuant to 28 U.S.C. § 1391.

8. Within 300 days of the conduct alleged below, Bates filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC"), Charge No. 532-2022-02102 against University Hospitals.

9. On or about September 19, 2022, the EEOC issued and mailed a Notice of Right to Sue letter to Bates regarding the Charges of Discrimination brought by Bates against University Hospitals in EEOC Agency Charge No. 531-2022-02102.

10. Bates received her Right to Sue letter from the EEOC in accordance with 42 U.S.C. § 2000e-5(f)(1) - which has been attached hereto as Plaintiff's Exhibit A.

11. Bates has filed this Complaint within 90 days of the issuance of the Notice of Right to Sue letter.

12. Bates has properly exhausted her administrative remedies pursuant to 29 C.F.R. § 1614.407(b).



## FACTS

13. Bates is a former employee of University Hospitals.

14. Bates began working for University Hospitals on or around October 22, 2018.

15. University Hospitals employed Bates as a Revenue Cycle Supervisor.

16. Bates suffers from disabilities including deep vein thrombosis, anemia, and hypertension.

17. Deep vein thrombosis, anemia, and hypertension constitute physical impairments.

18. Bates' disability substantially impaired one or more of her major life activities, including working.

19. University Hospitals perceived Bates' disability to substantially impair one or more of her major life activities, including working.

20. Despite this actual or perceived disabling condition, Bates was still able to perform the essential functions of her job.

21. As a result of her physical impairments, Bates is and was considered disabled within the meaning of the ADA 42 U.S.C. 126 § 12101 *et seq*.

22. As a result of her physical impairments, Bates is and was considered disabled within the meaning of R.C. § 4112.01 *et seq*.

23. On or about April 19, 2021, Bates suffered a medical emergency related to her disabilities and was hospitalized for about a week.

24. On or about April 19, 2021, Bates contacted her supervisor, Kelly Thomascik, to disclose the hospitalization and request medical leave for her serious health condition.

25. Bates applied for FMLA leave based on her serious health condition.

26. University Hospitals approved Bates' FMLA leave.

27. While Bates was on FMLA leave, Thomascik assumed Bates' supervisory duties.

28. On or about April 26, 2021, Bates returned to work.



29. Bates continued to use Intermittent FMLA for follow-up care related to her April 19, 2021 hospitalization.

30. Thomascik told Bates that she was concerned that Bates taking medical leave was interfering with Bates' work performance.

31. Bates had previously been awarded a "stellar" rating on her 2020 and 2021 performance reviews.

32. On or about May 28, 2021, Thomascik placed Bates on a Performance Improvement Plan ("PIP").

33. In the PIP, Thomascik stated that one of Bates' performance issues was based on an audit that Bates missed while she was hospitalized on April 19, 2021.

34. In the PIP, Thomascik cited Bates' failure to fix a computer systems issue that both University Hospitals IT and the software vendor could not fix.

35. The PIP listed areas of improvement for Bates including responding to emails within two hours, ensuring a positive workplace, and communicating professionally.

36. Along with the pretextual and subjective improvement items listed in the PIP, Thomascik undermined Bates' authority as a supervisor and treated Bates unfavorably based on her race.

37. Thomascik, a Caucasian, prevented Bates from issuing discipline to Caucasian employees.

38. Thomascik intervened in disciplinary issues when Bates attempted to discipline Caucasian employees.

39. Thomascik did not intervene when Bates issued discipline to Black employees.

40. Thomascik did not discipline Caucasian employees who had the same computer systems issue that Bates was disciplined for.

41. Bates reported the apparent discriminatory bias regarding discipline to Wesley Haymond in Human Resources.



42. Haymond advised Bates to learn to cope with difficult employees.

43. Haymond took no action to prevent or correct the discrimination Bates reported.

44. Thomascik interfered with Bates' job duties and then subjectively graded Bates on her PIP performance.

45. On or around November 8, 2021, University Hospitals terminated Bates' employment.

46. University Hospitals asserted that Bates' employment was terminated for failure to meet the expectations in the May 28, 2021 PIP.

47. The expectations in the PIP were based on incidents outside Bates' control and subjectively graded by Thomascik who interfered with Bates' job performance.

48. The PIP expected Bates to improve events that occurred while Bates was off work on approved FMLA leave.

49. The PIP expected Bates to improve computer systems issues outside her control.

50. The PIP expected Bates to ensure a positive workplace and communicate professionally while Thomascik actively undermined Bates job duties and created a hostile work environment based on Bates' race.

51. University Hospitals' purported reason for termination is pretext for race discrimination.

52. University Hospitals' purported reason for termination is pretext for disability discrimination.

53. University Hospitals' purported reason for termination is pretext for FMLA retaliation.

54. Upon information and belief, University Hospitals has a progressive disciplinary policy ("Progressive Discipline Policy").

55. University Hospitals has used Progressive Discipline Policy when disciplining employees who had not utilized FMLA leave.

56. University Hospitals has used Progressive Discipline Policy when disciping employees who were not disabled.



57. Under University Hospitals' Progressive Discipline Policy, Bates had not received any meaningful discipline.

58. Under University Hospitals' Progressive Discipline Policy, Bates had not received any written warnings.

59. University Hospitals skipped steps under the Progressive Discipline Policy when they terminated Bates' employment.

60. Skipping steps under the Progressive Discipline Policy is an adverse employment action.

61. Skipping steps under the Progressive Discipline Policy is an adverse action.

62. Terminating Bates' employment was an adverse employment action.

63. Terminating Bates' employment was an adverse action.

64. The above facts demonstrate University Hospitals engaged in a pattern and practice of race discrimination.

65. The above facts demonstrate University Hospitals engaged in a pattern and practice of disability discrimination.

66. The above facts demonstrate Defendant engaged in a pattern and practice of FMLA retaliation.

67. There was a causal connection between Bates' race and University Hospitals' termination of Bates' employment.

68. There was a causal connection between Bates' disability and University Hospitals' termination of Bates employment.

69. There was a causal connection between Bates' utilization of FMLA leave and University Hospitals' termination of Bates' employment.

### COUNT I: DISABILITY DISCRIMINATION IN VIOLATION OF ADA

70. Bates restates each and every prior paragraph of this Complaint, as if it were fully restated herein.



71. Bates has one or more physical and/or mental impairments that significantly limit her in one or more major life activities, including working.

72. Bates has a record of physical and/or mental impairments.

73. Bates suffers from deep vein thrombosis, anemia, and hypertension.

74. Bates is disabled pursuant to 42 U.S.C. §12102.

75. University Hospitals perceived Bates as being disabled based on the conditions she suffered from.

76. Despite this actual or perceived disability, Bates was still able to perform all the essential functions of her job.

77. University Hospitals treated Bates differently than other similarly situated employees based on her disabling condition.

78. University Hospitals treated Bates differently than other similarly situated employees based on her perceived disabling condition.

79. On or about May 28, 2021, University Hospitals placed Bates on a PIP without just cause.

80. On or around November 8, 2021, University Hospitals terminated Bates' employment without just cause.

81. University Hospitals terminated Bates' employment based on her disability.

82. University Hospitals terminated Bates' employment based on her perceived disability.

83. University Hospitals violated 42 U.S.C. §12112(a) when it discharged Bates based on her disability.

84. University Hospitals violated 42 U.S.C. §12112(a) when it discharged Bates based on her perceived disability.

85. University Hospitals violated 42 U.S.C. §12112(a) by discriminating against Bates based on her disabling condition.



86. University Hospitals violated 42 U.S.C. §12112(a) by discriminating against Bates based on her perceived disabling condition.

87. As a direct and proximate result of University Hospitals' conduct, Bates suffered and will continue to suffer damages, including economic and emotional distress damages.

**COUNT II: DISABILITY DISCRIMINATION IN VIOLATION OF R.C §4112.02**

88. Bates restates each and every prior paragraph of this Complaint, as if it were fully restated herein.

89. Bates suffers from deep vein thrombosis, anemia, and hypertension.

90. Bates is disabled.

91. In the alternative, University Hospitals perceived Bates as being disabled.

92. Bates' condition constituted a physical impairment.

93. Bates' condition substantially impaired one or more of her major life activities including working.

94. In the alternative, University Hospitals perceived Bates' condition to substantially impair one or more of her major life activities including working.

95. Despite this actual or perceived disabling condition, Bates was still able to perform all the essential functions of her job.

96. University Hospitals treated Bates differently than other similarly situated employees based on her disabling condition.

97. University Hospitals treated Bates differently than other similarly situated employees based on her perceived disabling condition.

98. On or about May 28, 2021, University Hospitals placed Bates on a PIP without just cause.

99. University Hospitals placed Bates on a PIP based on her disability.

100. University Hospitals placed Bates on a PIP based on her perceived disability.



101. On or about November 8, 2021, V terminated Bates' employment without just cause.

102. University Hospitals terminated Bates' employment based her disability.

103. University Hospitals terminated Bates' employment based her perceived disability.

104. University Hospitals violated R.C. §4112.02 when it placed Bates on a PIP based on her disability.

105. University Hospitals violated R.C. §4112.02 when it placed Bates on a PIP based on her perceived disability.

106. University Hospitals violated R.C. §4112.02 when it discharged Bates based on her disability.

107. University Hospitals violated R.C. §4112.02 when it discharged Bates based on her perceived disability.

108. University Hospitals violated R.C. §4112.02 by discriminating against Bates based on her disabling condition.

109. University Hospitals violated R.C. §4112.02 by discriminating against Bates based on her perceived disabling condition.

110. University Hospitals violated The American with Disabilities Act (ADA) section 12112.

111. Bates suffered emotional distress as a result of University Hospitals' conduct, and is entitled emotional distress damages pursuant to R.C. § 4112.01 *et seq*.

112. As a direct and proximate result of University Hospitals' conduct, Bates suffered and will continue to suffer damages, including economic and emotional distress damages.

### COUNT III: FAILURE TO ACCOMODATE UNDER THE AMERICANS WITH DISABILITY ACT

113. Bates informed University Hospitals of her disabling condition.

114. Bates requested accommodations from University Hospitals to assist with her disabilities including utilization of her approved FMLA leave.

115. Bates' requested accommodations were reasonable.

9



116. There was an accommodation available that would have been effective and would have not posed an undue hardship to University Hospitals.

117. University Hospitals failed to engage in the interactive process of determining whether Bates needed an accommodation.

118. University Hospitals failed to provide an accommodation.

119. University Hospitals violated The Americans with Disabilities Act (ADA) 42 U.S.C. 126 § 12101 *et seq.*

120. As a direct and proximate result of University Hospitals' conduct, Bates suffered and will continue to suffer damages, including economic and emotional distress damages.

### COUNT IV: FAILURE TO ACCOMODATE UNDER O.R.C. 4112.01 et. seq.

121. Bates informed University Hospitals of her disabling condition.

122. Bates requested accommodations from University Hospitals to assist with his disabilities including utilizing her approved FMLA leave.

123. Bates' requested accommodations were reasonable.

124. There was an accommodation available that would have been effective and would have not posed an undue hardship to University Hospitals.

125. University Hospitals failed to engage in the interactive process of determining whether Bates needed an accommodation.

126. University Hospitals failed to provide an accommodation.

127. University Hospitals violated R.C. §4112.02 by failing to provide Bates a reasonable accommodation.

128. Bates suffered emotional distress as a result of University Hospitals' conduct, and is entitled emotional distress damages pursuant to R.C. § 4112.01 *et seq.*



129. As a direct and proximate result of University Hospitals' conduct, Bates suffered and will continue to suffer damages, including economic and emotional distress damages.

### COUNT V: RACE DISCRIMINATION IN VIOLATION OF 42 U.S.C. § 2000e-2

130. Bates restates each and every prior paragraph of this Complaint, as if it were fully restated herein.

131. Bates was at all times referenced herein a member of a protected class based on her race.

132. University Hospitals subjected Bates to an adverse employment action based on her race.

133. Throughout her employment, Bates was fully qualified and competent to perform her essential job duties.

134. University Hospitals treated Bates less favorably than similarly situated Caucasian employees.

135. University Hospitals violated The Civil Rights Act of 1964, 42 U.S.C. § 2000e-2 *et seq.* by discriminating against Bates due to her race.

136. On or about November 8, 2021, University Hospitals terminated Bates without just cause.

137. At all times material herein, similarly, situated non-African American employees were not terminated without just cause.

138. University Hospitals terminated Bates based on her race.

139. University Hospitals violated 42 U.S.C. § 2000e-2 *et seq.* when it terminated Baters based on her race.

140. Bates suffered emotional distress as a result of University Hospitals' conduct, and is entitled to emotional distress damages pursuant to 42 U.S.C. § 2000e-2 *et seq.*

141. As a direct and proximate result of University Hospitals conduct, Bates has suffered and will continue to suffer damages, including economic damages and emotional distress.

### COUNT VI: RACE DISCRIMINATION IN VIOALTION OF R.C. § 4112.02 *et seq.*



142. Bates restates each and every prior paragraph of this Complaint, as if it were fully restated herein.

143. Bates was at all times referenced herein a member of a protected class based on her race.

144. University Hospitals subjected Bates to an adverse employment action based on her race.

145. Throughout her employment, Bates was fully qualified and competent to perform her essential job duties.

146. University Hospitals treated Bates less favorably than other similarly situated Caucasian employees.

147. University Hospitals violated Ohio Revised Code § 4112.02(A) *et seq.* by discriminating against Bates based on her race.

148. On or about November 8, 2021, University Hospitals terminated Bates without just cause.

149. At all times material herein, similarly situated non-African American employees were not terminated without just cause.

150. University Hospitals terminated Bates based on her race.

151. University Hospitals violated R.C. § 4112.01 *et. seq*. when it terminated Bates based on her race.

152. Bates suffered emotional distress as a result of University Hospitals' conduct, and is entitled emotional distress damages pursuant to R.C. § 4112.01 *et seq*.

153. As a direct and proximate result of University Hospitals' conduct, Bates has suffered and will continue to suffer damages, including economic damages and emotional distress.

### COUNT VII: RETALIATION IN VIOLATION OF 42 U.S.C. § 2000e-2

154. Bates restates each and every prior paragraph of this Complaint, as if it were fully restated herein.

155. Bates restates each and every prior paragraph of this complaint, as if it were fully restated herein.



156. As a result of the University Hospitals' discriminatory conduct described above, Bates complained to University Hospitals about the race discrimination that she was experiencing.

157. Subsequent to Bates reporting race discrimination to her supervisor, University Hospitals terminated Bates' employment.

158. University Hospitals' actions were retaliatory in nature based on Bates' opposition to the unlawful discriminatory conduct.

159. Bates suffered emotional distress as a result of University Hospitals' conduct, and is entitled emotional distress damages pursuant to 42 U.S.C. § 2000e-2 *et seq*.

160. As a direct and proximate result of University Hospitals' retaliatory discrimination against and termination of Bates, she suffered and will continue to suffer damages, including economic damages and emotional distress.

### COUNT VIII: RETALIATION IN VIOLATION OF R.C. § 4112.01

161. Bates restates each and every prior paragraph of this Complaint, as if it were fully restated herein.

162. Bates restates each and every prior paragraph of this complaint, as if it were fully restated herein.

163. As a result of the University Hospitals' discriminatory conduct described above, Bates complained to University Hospitals about the race discrimination that she was experiencing.

164. Subsequent to Bates' reporting of race discrimination to Human Resources, University Hospitals terminated Bates' employment.

165. University Hospitals' actions were retaliatory in nature based on Bates' opposition to the unlawful discriminatory conduct.

166. Pursuant to R.C. § 4112.02 (I), it is an unlawful discriminatory practice "to discriminate in any manner against any other person because that person has opposed any unlawful discriminatory practice defined in this section…"

167. Bates suffered emotional distress as a result of University Hospitals' conduct, and is entitled emotional distress damages pursuant to R.C. § 4112.01 *et seq*.

168. As a direct and proximate result of University Hospitals' retaliatory discrimination against and termination of Bates, she suffered and will continue to suffer damages, including economic damages and emotional distress.

## COUNT IX: UNLAWFUL INTERFERENCE WITH FMLA RIGHTS

169. Bates restates each and every prior paragraph of this Complaint, as if it were fully restated herein.

170. Pursuant to 29 U.S.C. § 2601 *et seq*., covered employers are required to provide employees job-protected unpaid leave for qualified medical and family situations.

171. University Hospitals is a covered employer under the FMLA.

172. During her employment, Bates qualified for FMLA leave.

173. During her employment, Bates elected to utilize FMLA leave.

174. University Hospitals unlawfully interfered with Bates' exercise of her rights under the FMLA in violation of Section 105 of the FMLA and section 825.220 of the FMLA regulations.

175. University Hospitals' act of placing Bates on a PIP for events that occured during her FMLA leave violated and interfered with Bates' FMLA rights.

176. University Hospitals violated section 825.300(c)(1) of the FMLA and interfered with Bates' FMLA rights when University Hospitals did not honor Bates' approved use of FMLA leave.

177. As a direct and proximate result of University Hospitals' conduct, Bates is entitled to all damages provided for in 29 U.S.C. § 2617, including liquidated damages, costs and reasonable attorneys' fees.



## COUNT X: RETALIATION IN VIOLATION OF THE FMLA

178. Bates restates each and every prior paragraph of this Complaint, as if it were fully restated herein.

179. During her employment, Bates utilized FMLA leave.

180. After Bates utilized her qualified FMLA leave, University Hospitals retaliated against her.

181. University Hospitals retaliated against Bates by placing her on a PIP based on events that occurred during her FMLA leave.

182. University Hospitals retaliated against Bates by terminating her employment.

183. University Hospitals willfully retaliated against Bates in violation of 29 U.S.C. § 2615(a).

**184.** As a direct and proximate result of University Hospitals' wrongful conduct, Bates is entitled to all damages provided for in 29 U.S.C. § 2617, including liquidated damages, costs, and reasonable attorneys' fees.

## DEMAND FOR RELIEF

WHEREFORE, Bates respectfully request this Court grant:

(a) An order requiring University Hospitals to restore Bates to one of the positions to which she was entitled by virtue of her application and qualifications, and expunge her personnel file of all negative documentation;

(b) An award against University Hospitals of compensatory and monetary damages to compensate Bates for lost wages, emotional distress, and other consequential damages, in an amount in excess of $25,000 per claim to be proven at trial;

(c) An award of punitive damages against University Hospitals in an amount in excess of $25,000;

(d) An award of reasonable attorneys' fees and non-taxable costs for Bates' claims as allowable under law;

(e) An award of the taxable costs of this action; and

15



(f) An award of such other relief as this Court may deem necessary and proper.

>Respectfully submitted,
>
>*/s/Fred M. Bean*
>Fred M. Bean (0086756)
>David E. Byrnes (0086975)
>**SPITZ, THE EMPLOYEE'S LAW FIRM**
>25825 Science Park Drive, Suite 200
>Beachwood, OH 44122
>Phone: (216) 291-4744
>Fax:     (216) 291-5744
>Email:  Fred.Bean@spitzlawfirm.com
>            David.Byrnes@spitzlawfirm.com
>
>*Attorneys For Plaintiff Nartisha Bates*

## JURY DEMAND

Plaintiff Nartisha Bates demands a trial by jury by the maximum number of jurors permitted.

>*/s/Fred M. Bean*
>Fred M. Bean (0086756)
>David E. Byrnes (0086975)
>**SPITZ, THE EMPLOYEE'S LAW FIRM**

